UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
CECILIO E.,

                         Plaintiff,          DECISION AND ORDER
                                             1:22-cv-08750-GRJ

            v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

    In February of 2020, Plaintiff Cecilio E.[1] applied for Supplemental

Security Income benefits under the Social Security Act. The Commissioner

of Social Security denied the application.  Plaintiff, represented by Ny

Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action

seeking judicial review of the Commissioner's denial of benefits under 42

U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction

of a United States Magistrate Judge. (Docket No. 14).

    This case was referred to the undersigned on January 26, 2022.

Presently pending are the parties' Motions for Judgment on the Pleadings

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 20,

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

22). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied and this case is remanded for further administrative proceedings.

# I.  BACKGROUND

## A.    Administrative Proceedings

Plaintiff applied for benefits on February 10, 2020, alleging disability beginning August 25, 2018. (T at 11, 56).[2]  Plaintiff's application was denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on November 12, 2020, before ALJ Angela Banks. (T at 26-45). Plaintiff appeared with an attorney and testified. (T at 30-40). The ALJ also received testimony from J. Gaudet, a vocational expert. (T at 40-44).

## B.    ALJ's Decision

On June 15, 2021, the ALJ issued a decision denying the application for benefits. (T at 8-25).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 10, 2020 (the application date). (T at 13).  The ALJ concluded that Plaintiff's degenerative disc disease and degenerative joint disease were severe impairments as defined under the Social Security Act. (T at 13).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 15.

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 16).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 CFR 404.1567 (a). (T at 17).

The ALJ found that Plaintiff had no past relevant work. (T at 20). Considering Plaintiff's age (41 on the application date), education (limited), work experience (no past relevant work), and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 20).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between February 10, 2020 (the application date) and June 15, 2021 (the date of the ALJ's decision). (T at 21).  On August 29, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing

a Complaint on October 14, 2022. (Docket No. 1).  On July 24, 2023,

Plaintiff filed a motion for judgment on the pleadings, supported by a

memorandum of law. (Docket Nos. 20, 21).  The Commissioner interposed

a cross-motion for judgment on the pleadings, supported by a

memorandum of law, on September 19, 2023. (Docket Nos. 22, 23).  On

October 11, 2023, Plaintiff submitted a reply memorandum of law in further

support of his motion. (Docket No. 24).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a

claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

The court's review is limited to "determin[ing] whether there is substantial

evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566

F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings,

which are considered conclusive if supported by substantial evidence. *See*

42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla"

and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    Five-Step Sequential Evaluation Process

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises five grounds in support of his request for reversal of the ALJ's decision.  First, he argues that the ALJ failed to adequately develop the record.  Second, Plaintiff contends that the ALJ's assessment of the medical opinion evidence was flawed.  Third, Plaintiff asserts that the ALJ erred in considering his need to use a cane.  Fourth, he argues that the RFC determination is not supported by substantial evidence.  Fifth, Plaintiff challenges the ALJ's credibility assessment.  The Court will address each argument in turn.

### A.    *Duty to Develop the Record*

Social Security proceedings are non-adversarial and the ALJ is obliged "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 147 L. Ed. 2d 80, 120 S. Ct. 2080 (2000) (citation omitted). This obligation applies even if

7

the claimant is represented by counsel. *See, e.g., Rosa v. Callahan*, 168

F.3d 72, 79 (2d Cir. 1999)(citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.

1996)). The ALJ's duty to develop the record has been described as a

"bedrock principle of Social Security law." *Batista v. Barnhart*, 326

F.Supp.2d 345, 353 (E.D.N.Y.2004)(citing *Brown v. Apfel*, 174 F.3d 59 (2d

Cir.1999)).

In the present case, at the conclusion of the administrative hearing,

the ALJ granted Plaintiff's counsel a two-week extension to obtain records

from Dr. Mark Hill.  (T at 29, 44-45).  Plaintiff testified that Dr. Hill was his

primary care physician and prescribed medication to treat his anxiety and

depression. (T at 36).

On December 3, 2020, Plaintiff's counsel sent a letter to the ALJ

requesting a subpoena. (T at 157-58).  Counsel documented his (and

Plaintiff's) unsuccessful, repeated efforts to obtain records from Dr. Hill's

office, explained that he believed the records were essential to the disability

determination, and requested that the ALJ issue a subpoena or otherwise

request the records. (T at 157-58).

In her decision, the ALJ acknowledged the request for a subpoena,

but explained that she denied the request because "the evidence was

sufficient to render [a] decision …." (T at 11).  Regarding Plaintiff's mental

health, the ALJ recognized anxiety disorder as a medically determinable impairment but found that it did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and was therefore non-severe. (T at 14).

The Commissioner defends the ALJ's denial of the subpoena request, citing two attempts by the State Agency to obtain records from Dr. Hill (T at 458-59, 462) and noting that an ALJ's refusal to issue a subpoena is subject to an abuse of discretion review. *See Herrera v. Comm'r of Soc. Sec.*, No. 20-CV-7910 (KHP), 2021 WL 4909955, at *7 (S.D.N.Y. Oct. 21, 2021).

The Commissioner further argues that the record as developed, which includes a consultative psychiatric evaluation and State Agency physician review, supports the conclusion that Plaintiff does not have a severe mental impairment.

The Court finds the Commissioner's arguments unpersuasive.

Courts in the Southern District of New York have consistently recognized that "an ALJ has a heightened duty to develop the record when a claimant asserts a mental impairment." *Gabrielsen v. Colvin,* No. 12-CV-5694 KMK PED, 2015 WL 4597548, at *4-5 (S.D.N.Y. July 30, 2015)(collecting cases).

"This 'heightened duty' derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456, 462-63 (S.D.N.Y. 2016).

Underpinning the heightening of the ALJ's duty is a recognition that the records and opinions of treating providers are particularly probative in claims involving mental health.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."); *see also Marinez v. Comm'r of Soc. Sec.*, 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (noting that treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.") (citing 20 C.F.R. § 416.927(c)(2)).

Here, the record contains limited treatment notes from the period following the application for benefits and no records from Dr. Hill, the

primary care physician and medical professional responsible for managing Plaintiff's psychiatric medication. (T at 36, 357-413, 444-57).

Treatment notes characterize Plaintiff's anxiety as a "psychiatric co-morbidity." (T at 367, 372, 393, 400, 405).   Moreover, while Dr. Arlene Broska, the consultative psychological examiner, assessed only mild psychiatric limitations, she nevertheless diagnosed adjustment disorder with mixed anxiety and depressed mood, documented impairment with respect to Plaintiff's attention and concentration, recommended psychiatric intervention, and characterized Plaintiff's prognosis as "fair." (T at 354-56).

Under these circumstances, the ALJ should have issued a subpoena to obtain Dr. Hill's records.  A remand, therefore, is required. *See Harris o/b/o N.L.K. v. Berryhill*, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018)("The fact that the essential treatment records were requested, but not received, 'does not obviate the ALJ's independent duty to develop the record,' particularly since the ALJ could have exercised his power to subpoena them, but did not.")(quoting *Benjamin v. Colvin*, No. 16-CV-1730 (LDH), 2017 WL 4402445, at *8 (E.D.N.Y. Sept. 30, 2017)).

B.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. See 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. See 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. See 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, as noted above, Dr. Arlene Broska performed a consultative psychiatric evaluation in March of 2020. (T at 357-63). The ALJ found Dr. Broska's evaluation supported by, and consistent with, the record, and therefore deemed her opinion persuasive. (T at 15). The ALJ relied heavily on Dr. Broska's assessment in concluding that Plaintiff did not have a severe mental impairment. (T at 14-16).

Plaintiff argues that the ALJ mischaracterized Dr. Broska's opinion. Dr. Broska assessed mild limitation in Plaintiff's ability to understand, remember, or apply complex directions or instructions; no limitation using reason and judgment to make work-related decisions; no limitation in

13

interacting with supervisors, co-workers, and the public; mild limitation sustaining concentration and pace; no limitation sustaining routine and regular attendance; and mild impairment in regulating emotions, controlling behavior, and maintaining well-being. (T at 355).

Dr. Broska also stated that there was "evidence of psychiatric limitation understanding, remembering or applying simple directions and instructions," but did not characterize the level of impairment with respect to this domain of functioning. (T at 355).

The ALJ concluded that Dr. Broska inadvertently omitted the word "no" before the word "evidence" and construed the opinion as assessing no limitation in Plaintiff's ability to understand, remember, or apply simple directions or instructions. (T at 14, n. 1).

Plaintiff argues that this was an unreasonable interpretation of Dr. Broska's intent and contends that the ALJ should have sought clarification from Dr. Broska.

The Court concludes there was no harm in any arguable error in the ALJ's reading of Dr. Broska's assessment.  The ALJ found that Plaintiff had mild limitation with respect to understanding, remembering, or applying information. (T at 14).  This conclusion is not inconsistent with Dr. Broska's overall opinion, which showed only mild impairment in attention and

concentration and normal memory skills, and included a finding that Plaintiff's psychiatric problems did "not appear to be significant enough to interfere with [his] ability to function on a daily basis." (T at 355).

Although the Court finds a remand necessary for the reasons stated above, the Court finds no reversible error as to how the ALJ construed Dr. Broska's opinion.

C.    Use of a Cane

Plaintiff testified that he uses a cane for balance and walking. (T at 34).  Plaintiff's use of a cane was documented in medical records that pre-dated his application for benefits. (T at 269-72, 291-93, 298-300).  Dr. Eric Rosenbaum, who performed a consultative physical examination in March of 2020, found a cane useful and medically necessary for Plaintiff to maintain balance, although he noted that it did worsen Plaintiff's gait. (T at 360).

The ALJ found Dr. Rosenbaum's assessment of Plaintiff's need for a cane unpersuasive.  (T at 19).  The Court finds this aspect of the ALJ's decision supported by substantial evidence.  Treatment notes describe Plaintiff as mobile without using a cane and demonstrating a "steady gait." (T at 18, 271, 369, 396).  Although some records show that Plaintiff used a cane, there is no finding of medical necessity from a treating provider. (T at

269, 293, 299).  Dr. Rosenbaum assessed only mild limitation with respect to prolonged ambulation and moderate limitation regarding squatting, lifting, carrying, and stair climbing. (T at 361-62).  On examination, Plaintiff had no muscle atrophy, normal final motor activity in his hands bilaterally, and full flexion, extension, and rotary movement bilaterally.  (T at 361).

Lastly, while the vocational expert testified that a claimant who needed a cane for balance would be precluded from performing light work (T at 44), Plaintiff points to no evidence that his need to use a cane for balance would preclude him from performing sedentary work. *Compare Podolsky v. Colvin*, No. 12 CIV. 6544 RA JLC, 2013 WL 5372536, at *17 (S.D.N.Y. Sept. 26, 2013)("Thus, while the use of a cane may impact the ability of a claimant to do light or medium work, there was substantial evidence in the record for the ALJ to have concluded that Podolsky could perform sedentary work with his cane.") *with Lausell v. Comm'r of Soc. Sec.*, No. 19 Civ. 2016 (SLC), 2021 WL 797074, at *16 (S.D.N.Y. Mar. 1, 2021)(remanding because ALJ failed to develop the record concerning use of a cane, which was "outcome-determinative" of whether claimant could work under the VE testimony); *see also Parker v. Sullivan*, No. 91 CIV. 0981 (PNL), 1992 WL 77552, at *4 (S.D.N.Y. Apr. 8, 1992)(ALJ did not

commit reversible error in finding that claimant could perform sedentary

work notwithstanding need to use a cane).

    *D.   RFC*

A claimant's "residual functional capacity" ("RFC") is his or her

"maximum remaining ability to do sustained work activities in an ordinary

work setting on a continuing basis." *Melville*, 198 F.3d at 52 (quoting Social

Security Ruling ("SSR") 96-8p, 1996 WL 374184, *2 (July 2, 1996)). When

assessing a claimant's RFC, an ALJ is obligated to consider medical

opinions on a claimant's functioning based on an assessment of the record

as a whole. 20 C.F.R. §§ 404.1527(d)(2), 416.9527(d)(2) ("Although we

consider opinions from medical sources on issues such as ...your residual

functional capacity...the final responsibility for deciding these issues is

reserved to the Commissioner."). It is the Commissioner's role to weigh

medical opinion evidence and to resolve conflicts in that evidence. *See*

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *Veino v.*

*Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the

medical evidence are for the Commissioner to resolve.").

As discussed above, the ALJ determined that Plaintiff retained the

RFC to perform the full range of sedentary work, with no non-exertional

limitations.  (T at 17).  Plaintiff challenges four aspects of the RFC determination.

First, Plaintiff argues that the ALJ's failure to include any mental limitations in the RFC is not supported by substantial evidence.  For the reasons discussed above, the Court agrees that the record requires further development in the form of treatment records from Dr. Hill.  The ALJ's failure to include any mental limitations in the RFC cannot be sustained and must be revisited on remand after further development of the record.

Second, Plaintiff contends that his carpal tunnel syndrome should be considered a severe impairment.  The ALJ found that carpal tunnel did not cause more than a minimal effect on Plaintiff's ability to perform basic work activities.  (T at 14).  The ALJ noted physical examination results showing intact hand and finger dexterity and full grip strength in Plaintiff's hands and wrists. (T at 14, 361).

The Court finds that this aspect of the ALJ's decision should also be reconsidered on remand.  Diagnostic evidence evidenced the presence of bilateral carpal tunnel syndrome and moderate bilateral sensorimotor median nerve neuropathy at the wrists. (T at 275, 286).  The ALJ found it significant that there were no "treatment notes indicating limitation in daily activity relating to the … carpal tunnel condition." (T at 14).

Notably, however, Dr. Rosenbaum recognized the carpal tunnel diagnosis and assessed moderate limitation with respect to Plaintiff's capacity for carrying. (T at 361-62).  Moreover, Plaintiff testified that he cannot perform household chores, sometimes needs help from his mother to get dressed, has muscle spasms and cramping, frequently drops objects, and is not able to type. (T at 34-35, 37).  Further, there may be documentation of carpal tunnel-related symptoms in Dr. Hill's treatment notes, as he was Plaintiff's primary care physician during the period at issue.

The question of whether and to what extent Plaintiff's carpal tunnel impacts his RFC, therefore, must be reconsidered on remand.

Third, Plaintiff asserts that his ability to sit for prolonged periods is limited.  The ALJ's determination that Plaintiff could meet the sitting demands of sedentary work is supported by substantial evidence, including the assessments of Dr. Rosenbaum (T at 361-62) and State Agency review physicians. (T at 52, 64).

Lastly, Plaintiff contends that the ALJ did not adequately account for the impact of medication side effects.  However, Plaintiff does not point to any documented evidence of additional limitation related to side effects and

regularly reported that he did not experience side effects.  (T at 366, 372, 392, 399).

### E.    Credibility

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v. Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any

other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified that he uses a cane for balance and walking. (T at 34). Hand pain makes carrying objects difficult and he is not able to type. (T at 34-35). He experiences significant anxiety and depression symptoms. (T at 35-36). Prolonged sitting causes pain. (T at 33). He has difficulty with activities of daily living and concentration due to pain. (T at 37-38).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but concluded that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 17).

For the reasons outlined above, the Court finds that the ALJ's decision to discount Plaintiff's complaints of disabling depression, anxiety, and carpal tunnel symptoms is not supported by substantial evidence and should be revisited on remand after further development of the record.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 20) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 22) is DENIED; and this case is REMANDED for further proceedings consistent with this Decision and Order. The Clerk is directed to enter final judgment in favor of Plaintiff and then close the file.

Dated: October 27, 2023          *s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge